CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 13 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ERN REYNOLDS, | Civil Action No. 7:10-cv-00260 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| CITY OF ROANOKE | By: Hon. James C. Turk |
| Defendant. | Senior United States District Judge |

This case comes before the Court on Defendant Roanoke City's ("City") Motion to Dismiss (Dkt. No. 16). The Defendant filed a memorandum in support, the Plaintiff, Ern Reynolds, filed a memorandum in opposition. The Court heard the parties' oral arguments on June 10, 2011, and the matter is ripe for disposition. For the following reasons Defendant's Motion to Dismiss (Dkt. No. 16) is **GRANTED**.

## I. Procedural History and Factual Allegations

The Court does not attempt to enumerate every detail of plaintiff's lengthy claim but summarizes the following relevant facts. Reynolds is a trustee and beneficiary of real property located at 2059 Westover Avenue SW, and 1324 Brunswick Street SW, in Roanoke, VA. The property is a house that is configured to contain four separate dwelling units. Reynolds has used the property as a rental property containing four distinct households, and he desires to continue to use the property in this manner. Current City zoning ordinances only allow the property to be used to house one or two households or dwelling units. Plaintiff alleges that use of the property to house four households should be "grandfathered" under City zoning ordinances because the nonconforming use began and has continued to exist since before the zoning ordinances

prohibited such use. The City contends that Reynolds does not have evidence proving such nonconforming use existed before the zoning ordinances prohibited such use.

During 2009, Plaintiff placed a "for rent" sign in his yard. Plaintiff claims that he received a notice for violating zoning laws on June 19, 2009, which was connected to his placement of the sign. It is undisputed that Plaintiff was not penalized through a fine or any other action by this notice, but Plaintiff claims that he would have to pay a $250.00 fee to appeal a zoning violation or petition the City to change the zoning laws governing his property. Plaintiff alleges that on June 26, 2009, and August 5, 2009, inspectors from the City talked to him at length about his property. He alleges that these visits were intimidating because the inspectors talked about his lack of a certificate of occupancy. The City has refused to grant Reynolds a certificate of occupancy. The City alleges that this is due to the fact that Reynolds' property does not comply with City ordinances. Reynolds, through his complaint, insinuates that the certificate was denied, so that City employees could collect bribes from him. However, he never alleges that City employees asked for bribes.

Based on the above facts, plaintiff summarily alleges that the city violated his constitutional rights under the following: (1) the Eighth Amendment, (2) the Sixth Amendment, (3) the First Amendment, (4) the Bivens Doctrine, (5) 42 United States Code §§ 1983, 1985, (6) the Due Process Clause of the Fifth and Fourteenth Amendments, (7) the Fourteenth Amendment's liberty interest and property interest designations, (8) the Equal Protection Clauses of the Fifth and Fourteenth Amendments, and Virginia law. Plaintiff's Third Complaint, p. 16-17).

The Court has grave doubts as to whether Reynolds' rambling complaint states a claim upon which relief could be granted. The long and disjointed complaint makes many

constitutional claims that seem totally unrelated to zoning matters. However, it is unnecessary for the Court to make a finding as to whether the complaint states a claim, as it relies on the abstention doctrine to dismiss the case.

## II. The Abstention Doctrine

The Supreme Court has identified certain circumstances in which federal courts must abstain and decline review of cases that are properly within their jurisdiction. The "abstention doctrine" allows state courts to clarify unclear state law to avoid a federal court's unnecessary constitutional ruling. In cases where complex state administrative procedures are at issue, federal courts "<u>must</u> decline to interfere if the case involves (1) difficult state-law questions bearing on policy problems of substantial public import, or (2) efforts to establish a coherent state policy regarding a matter of substantial public concern." <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943) (emphasis added); <u>Colorado River Water Conservation Dist. V. U.S.</u>, 424 U.S. 800, 814 (1976); <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25 (1959). Courts often apply the abstention doctrine in cases concerning land use and zoning. See e.g. <u>Fralin & Waldron, Inc. v. City of Martinsville</u>, F.2d 481 (4th Cir. 1974). Moreover, courts have approved abstention where state law provides an adequate remedy. <u>Atlas Life Ins. Co. v. W.I. Southern, Inc.</u>, 306 U.S. 563.

In <u>Burford</u>, Sun Oil Company brought suit against G.E. Burford and others in federal court based on diversity jurisdiction. 319 U.S. at 317. The Sun Oil Co. challenged the validity of a permit the Texas Railroad Commission granted to Burford to drill four oil wells on a plot of land in East Texas. <u>Id.</u> The Supreme Court held that the district court should have dismissed the case because the state provided a uniform method for adjudicating such cases. <u>Id.</u> at 334. Additionally, the Court stated that conflicting conclusions result when federal courts attempt to

3

interpret unclear state law. Id. 327. Most importantly, the Court maintained that federal courts should consider abstention if in the best interest of the public. The Court stated:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest"; for it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." Id. at 317-318.

In Fralin & Waldron, Inc. v. City of Martinsville, the Fourth Circuit upheld the district court's decision to abstain from adjudicating a zoning claim based on local land use policy. 493 F.2d 481 (4th Cir. 1974). Martinsville refused to grant the plaintiff a special use permit or approve its subdivision plan based on the City Code. The plaintiff contended that the code was unconstitutionally vague and discriminatorily applied. Id. at 482. The district court determined that the state courts should hear the case initially due to their "familiarity and experience with such matters." Id. The plaintiff then brought an interlocutory appeal challenging the district court's decision to abstain from hearing its action. The Fourth Circuit maintained:

> All of [Fralin & Waldron's] claims raise legitimate questions involving municipal zoning ordinances, the correct construction of local land use law as to special use permits, and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them. A state adjudication may well avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs. Id. 482-483.

### III. The Abstention Doctrine's Application in the Current Case

Plaintiff in this case is claiming that Roanoke City committed constitutional, state, and statutory violations. Each claim derives from whether Reynolds' use of his property violates

4

Roanoke City zoning ordinances, and whether those zoning ordinances violate federal or state law.

Plaintiff claims that prior to rezoning in 2000, he lawfully used his property as a four-family unit configured for four separate households. Plaintiff contends that although the city code now classifies his property as a residence that cannot be used for multi-family use, his prior non-conforming use is "grandfathered." Plaintiff contends that he can provide affidavits supporting this, but the City contends that the Plaintiff's evidence does not support his prior-use claim. Moreover, the City maintains that zoning codes have not allowed properties under which Plaintiff's property falls, to house four families since 1932.

Local and state law provide the Plaintiff an avenue for relief. The City's residential zoning codes are listed in Chapter 36.2 of the Roanoke City Code. The Board of Zoning Appeals considers applications for special exceptions and variances from the City's code. The Board also hears appeals from any order, requirement, decision, or determination made by the zoning administrator or administrative officer. Moreover, if a party is dissatisfied with the Board's decision, it can file an appeal with the Clerk of the Circuit Court within thirty calendar days after the final decision of the Board. Because Plaintiff's constitutional claims require the interpretation of state and local law, "[a] state adjudication may well avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs. Fralin and Waldron, 493 F.2d at 482-483.

Abstention in this case would be appropriate because Virginia courts have substantial experience adjudicating claims involving local zoning ordinances. The zoning ordinances challenged by Plaintiff are technical and are enforced and interpreted by local government bodies

and state courts. The interpretation and application of these ordinances can involve complex relationships between local government bodies and the state courts. Therefore, state courts are in a better position than this Court to interpret and apply the challenged zoning laws. Additionally, Virginia likely has an interest in maintaining a coherent policy regarding local issues such as zoning.

## IV. Conclusion

Although the district court may have jurisdiction in this case, Virginia should have the initial opportunity to hear Plaintiff's claims because Plaintiff's claims depend on the interpretation and application of local zoning law. The state arguably has more experience adjudicating complex claims involving local zoning ordinances and it likely has an interest in maintaining a consistent policy regarding these complex issues. Moreover, Roanoke City maintains a Board of Zoning Appeals which would provide the Plaintiff an opportunity to seek relief. Accordingly, all of Plaintiff's claims are **DISMISSED**.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

ENTER: This 13th day of July, 2011.

*/s/ James C. Turk*
Senior United States District Judge